UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

HALEY DECK, *et al.*,

    Plaintiffs,

vs.

MIAMI JACOBS BUSINESS COLLEGE
COMPANY, *et al.,*

    Defendants.

Case No.  3:12-cv-63

Judge Timothy S. Black

**ORDER: (1) GRANTING IN PART AND DENYING IN PART DEFENDANTS'
MOTION TO DISMISS OR STAY ACTION PENDING ARBITRATION (Doc. 14);
(2) DENYING DEFENDANT GRYPHON'S MOTION TO DISMISS (Doc. 15) AS
MOOT; AND (3) STAYING THIS CASE PENDING ARBITRATION**

This civil action is before the Court on: (1) Defendants'[1] motion to dismiss or stay action pending arbitration (Doc. 14) and the parties' responsive memoranda (Docs. 22, 25); and (2) Defendant Gryphon's motion to dismiss for lack of personal jurisdiction (Doc. 15) and the parties' responsive memoranda (Docs. 20, 24).[2]

## I.    FACTUAL BACKGROUND

Miami-Jacobs is a private college or "career school" with its principal place of business in Dayton, Ohio.  (Doc. 16, Ex. 2 at ¶ 6).  At various times between 2005 and

---

[1] Defendants include Miami-Jacobs Business College Company ("Miami-Jacobs"), Delta Career Education Corporation, Delta Educational Systems, Inc., and Gryphon (collectively, "Defendants").

[2] The United States declined to intervene in this civil action.  (Doc. 6).  However, the Government did file a limited statement of interest with respect to Defendants' motion to dismiss.  (Doc. 19).  Specifically, the Government notes that "[b]ecause an FCA claim under 31 U.S.C. § 3729 may not be settled without the consent of the Attorney General, the United States respectfully asserts that any arbitration ruling as to such a claim must necessarily be deemed a non-binding recommendation."  (*Id.* at 2).

2009, Plaintiffs enrolled as students of Miami-Jacobs. Plaintiffs claim that they paid tuition, incurred significant debt, lost wages or earning capacity in order to pursue and obtain what was falsely represented as accredited marketable degrees, certifications, education, and/or careers by Miami-Jacobs. Each Plaintiff signed an enrollment agreement detailing this purchase of services. In turn, each enrollment agreement contained the following identical language, in most instances separately initialed by each student above their signatures:

**ARBITRATION**
<u>Arbitration - Exclusive Remedy</u>. You and Miami-Jacobs Career College agree that any dispute arising out of or relating to this enrollment agreement, your enrollment or your attendance at Miami-Jacobs Career College, whether such dispute arises during or after your attendance and whether the dispute is based on contract, tort, statute, or otherwise, shall be resolved by binding arbitration in the Dayton, Ohio area in accordance with the Commercial Rules of the American Arbitration Association. You and Miami-Jacobs Career College each further agrees that this arbitration provision provides each party with its exclusive remedy for redress of any grievance or resolution of any dispute arising our [sic] of this Agreement, AND EACH PARTY EXPRESSLY WAIVES ANY RIGHT, INCLUDING WITHOUT LIMITATION THE RIGHT TO TRIAL BY JURY, IT MIGHT HAVE TO SEEK REDRESS IN ANY FEDERAL, STATE OR LOCAL COURT OR OTHER FORUM, except for an action to enforce in court an arbitration award rendered pursuant to this Agreement.

(Emphasis in original). (Doc. 16, Ex. 1 at ¶ 2).

On February 28, 2012, Plaintiffs filed this putative class action against Miami-Jacobs, along with two of Miami-Jacobs' successive corporate companies and a California investment company with an ownership interest in the successive corporate companies. The Complaint seeks a jury trial for the following claims: (1) breach of contract (¶¶ 146-152); (2) violation of federal statutes, including RICO (¶¶ 145-55) and False Claims Act (for which the United States has declined to intervene) (¶¶ 162-176);

(3) violation of Ohio statutes, including the Ohio Consumer Sales Practices Act (¶¶ 123-38), Ohio Pattern of Corrupt Activity Act (¶¶ 156-61), and Ohio Deceptive Trade Practices Act (¶¶ 199-203); (4) common law torts, including fraud (¶¶ 139-145), negligence (¶¶ 177-81), civil conspiracy (¶¶ 204-209), and public policy (¶¶ 210-13); and (5) equitable claims, including estoppel (¶¶ 182-94) and unjust enrichment (¶¶ 195-8).

Defendants seek to dismiss this action, requiring Plaintiffs to arbitrate their respective individual claims pursuant to the arbitration clause ("Agreement").

## II. STANDARD OF REVIEW

Under the Federal Arbitration Act (the "FAA"), a written agreement to arbitrate disputes which arise out of a contract involving transactions in interstate commerce "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." *Stout v. J.D. Byrider*, 228 F.3d 709, 714 (6th Cir. 2000) (*citing* 9 U.S.C. § 2). The FAA was designed to override judicial reluctance to enforce arbitration agreements, to relieve court congestion, and to provide parties with a speedier and less costly alternative to litigation.[3] *Id.*

When asked by a party to compel arbitration under a contract, a federal court must determine whether the parties agreed to arbitrate the dispute at issue. *Stout*, 228 F.3d at 719. Courts are to examine the language of the contract in light of the strong federal policy in favor of arbitration. *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983) (the FAA "is a congressional declaration of a liberal federal policy

---

[3] The arbitration agreement at issue in this case clearly falls within the scope of the FAA which applies whenever there is an agreement to arbitrate contained in "a contract evidencing a transaction involving commerce." 9 U.S.C. § 2.

3

favoring arbitration agreements, notwithstanding any state substantive or procedural policies to the contrary"). Any ambiguities in the contract or doubts as to the parties' intentions should be resolved in favor of arbitration. *Stout*, 228 F.3d at 714. The "primary purpose" of the FAA is to ensure "that private agreements to arbitrate are enforced according to their terms." *Volt Info. Sciences, Inc. v. Bd. of Tr. of Leland Stanford, Jr. Univ.*, 489 U.S. 468, 479 (1989).[4]

Section 3 of the FAA provides as follows:

> If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such agreement, shall on application of one of the parties, stay the trial of the action until such arbitration has been had in accordance with the terms of the Agreement, provided the applicant for the stay is not in default in proceeding with such arbitration.

9 U.S.C. § 3. Section 3 thus "requires" a court in which suit has been brought "'upon any issue referable to arbitration under an agreement in writing for such arbitration' to stay the court action pending arbitration once it is satisfied that the issue is arbitrable under the agreement." *Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 400 (1967).[5]

---

[4] *See also Moses H. Cone Mem'l Hosp.*, 460 U.S. at 24 (the FAA expresses Congress' intent "to mandate enforcement of all covered arbitration agreements").

[5] *See also Santos v. Am. Broad. Co.*, 866 F.2d 892, 894 (6th Cir. 1989) ("[w]here the parties to a contract that provides for arbitration have an arbitrable dispute, it is crystal clear that Congress has mandated that federal courts defer to contractual arbitration").

When considering a motion to stay proceedings and compel arbitration under the FAA, a court has four tasks: (1) it must determine whether the parties agreed to arbitrate; (2) it must determine the scope of the arbitration agreement; (3) if federal statutory claims are asserted, it must consider whether Congress intended those claims to be nonarbitrable; and (4) if the court concludes that some, but not all, of the claims in the action are subject to arbitration, it must determine whether to stay the remainder of the proceedings pending arbitration. *Stout*, 228 F.3d at 714.

The Sixth Circuit applies "the cardinal rule that, in the absence of fraud or willful deceit, one who signs a contract which he has had an opportunity to read and understand, is bound by its provisions." *Allied Steel & Conveyors, Inc. v. Ford Motor Co.*, 277 F.2d 907, 913 (6th Cir. 1960).  It is settled authority that doubt regarding the applicability of an arbitration clause should be resolved in favor of arbitration. *Id.*  Indeed, "any doubts are to be resolved in favor of arbitration unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." *Nestle Waters North America, Inc. v. Hollman*, 505 F.3d 498, 504 (6th Cir. 2007).  If parties contract to resolve their disputes in arbitration rather than in the courts, a party may not renege on that contract absent the most extreme circumstances. *Allied Steel & Conveyors, Inc.,* 277 F.2d at 913.  Furthermore, a district court's duty to enforce an arbitration agreement under the FAA is not diminished when a party bound by the agreement raises claims arising from statutory rights. *Id.*[6]

---

[6]  This Court routinely enforces arbitration provisions and compels arbitration.  *See, e.g., Crown Equip. Corp. v. Fla. Lift Sys.*, No. 3:04cv7, 2005 U.S. Dist. LEXIS 23112, at *2-3 (S.D. Ohio

### III.   ANALYSIS

**A.  Res Judicata/Stare Decisis/Collateral Estoppel**

In *Singleton v. Miami-Jacobs Career Coll.*, Montgomery County Court of Common Pleas, Case No. 2008-cv-1562, Judge Tucker held in two decisions (one staying the multi-plaintiff litigation pending arbitration on July 15, 2008 ("Singleton I"); the other denying opposing counsel's motion to reconsider on October 14, 2008 ("Singleton II")), that the Miami-Jacobs arbitration clause is enforceable under Ohio law.  Judge Tucker's decisions were rendered on the same facts after argument by the same counsel as in the instant case.

The *Singleton* decisions, which held that the Agreement mandates arbitration, is not unconscionable, and does not violate public policy, are binding in this action. Plaintiffs argue that "the analysis provided in [*Singleton I* and *II*] was incomplete, and incorrect in conclusion as a result…The previous decision is not law of the case and is not *stare decisis*."  (Doc. 22, n. 3).

*Stare decisis* is of "fundamental importance" to the rule of law, and any departure therefrom demands "special justification."  *Wampler v. Higgins*, 752 N.E.2d 962, 972 (Ohio 2001).  Additionally, the Supreme Court of Ohio has adopted the doctrine of

---

Dept. 26, 2005) (Rice, J.) (holding that parties must arbitrate the breach of contract dispute arising out of an agreement containing a valid arbitration provision); *Robert Lamb Hart Planners & Architects v. Evergreen, Ltd.*, 787 F. Supp. 753, 757 (S.D. Ohio 1992) (Spiegel, J.) (granting motion to compel arbitration provision where the firm's contract with the defendant corporation for a construction project contained a valid arbitration clause); *Eagle-Picher Indus. Inc., v. Asbestos Claims Facility, Inc.*, No. C-1-88196, 1988 U.S. Dist. LEXIS 11208, at *5 (S.D. Ohio June 23, 1988) (Rubin, J.) (upholding a stay of proceedings request in a breach of contract case between a company and its insurers pending the outcome of arbitration pursuant to a signed agreement between the parties).

collateral estoppel. *Grava v. Parkman Twp.*, 653 N.E.2d 226, 228 (Ohio 1994) ("The doctrine of *res judicata* involves both claim preclusion (historically called estoppel by judgment in Ohio) and issue preclusion (traditionally known as collateral estoppel)). Under the Restatement, the critical factors for applying collateral estoppel are whether the current and previous litigation both involve: (1) "essentially" the same issues, and (2) the same parties "or their privies." Restatement 2d of Judgments § 27, comment c. These requirements are met in this case. The factual allegations before the Court – whether the arbitration clause in the same Agreement is enforceable, unconscionable, or contrary to Ohio public policy – are not just similar to the issues adjudicated in *Singleton*, they are identical in every relevant respect. Therefore Plaintiffs cannot avoid the *Singleton* decisions, and this Court is compelled to prevent inconsistent outcomes in different forums.

While the Court finds that it is bound by the *Singleton* decisions, it will nonetheless undertake an independent analysis.

### B. Unconsionability

Plaintiffs argue that this Court should not enforce the arbitration agreement because the provision is unconscionable. Under Ohio law, the unconscionability doctrine has two components: (1) substantive unconscionability, *i.e.*, unfair and unreasonable contract terms, and (2) procedural unconscionability, *i.e.*, individualized circumstances surrounding each of the parties to a contract such that no voluntary meeting of the minds was possible. Both elements must be present to find a contract unconscionable. "The party asserting unconscionability of a contract bears the burden of proving that the

7

agreement is both procedurally and substantively unconscionable." *Crouse v. LaGrange Junction Ltd.*, 973 N.E.2d 822 (Ohio App. 2012).

### 1. *Procedural Unconscionability*

"Procedural unconscionability refers to the individualized circumstances surrounding each of the parties to a contract such that no voluntary meeting of the minds was possible." *Morrison v. Circuit City Stores, Inc.*, 317 F.3d 646, 666 (6th Cir. 2003). To determine whether an arbitration clause is procedurally unconscionable, courts have considered factors such as whether: (1) the arbitration clause was presented on a "take-it-or-leave-it basis;" (2) a disparity in bargaining power exists between the parties; (3) the arbitration clause was hidden in small print within the document; and (4) one of the parties could unilaterally modify the agreement. *Stachurski v. DirecTV, Inc.*, 642 F.Supp.2d 758, 767 (N.D. Ohio July 13, 2009).

First, Plaintiffs claim that the Agreement is procedurally unconscionable because they are "relatively uneducated and in low-paying jobs [and] unsophisticated consumers." (Doc. 22 at 9). However, Plaintiffs were adults and high school graduates who could read and write before signing the Agreements. "Ordinarily, one of full age in the possession of his faculties and able to read and write, who signs an agreement and remains acquiescent to its operative effect for some time, may not thereafter escape the consequences by urging that he did not read it or that he relied upon the representations of another as to its contents or significance." *Garcia v. Wayne Homes*, 2002-Ohio-1884, 2002 Ohio App. LEXIS 1917, at ¶ 43 (Ohio App. Apr. 19, 2002). Plaintiffs also argue that their inexperience and unfamiliarity with arbitration justifies their attempt to avoid

8

the effect of the arbitration provision. However, courts have also rejected this argument. "[L]ack of sophistication and lack of legal counsel do not render the Arbitration Agreement unenforceable." *Anderson v. Delta Funding Corp.*, 316 F. Supp. 2d 554, 566 (N.D. Ohio 2004).[7]

Second, Plaintiffs argue that the Agreements are unconscionable because they were "not told that [they] could change or negotiate any of the terms in the application and [they] did not understand or think that [they] could do so." (Doc. 21, Exs. 1-7 at ¶ 8). Plaintiffs do not state, however, that they made any attempt to negotiate the Agreement or to challenge any of its terms. Plaintiffs have not shown that they were prevented from challenging the arbitration clause or any other term in the Agreement. Moreover, even if Plaintiffs had tried and failed to negotiate the Agreement, that would not make it unconscionable. "An arbitration clause may be enforceable notwithstanding a disparity in bargaining power or the fact that the contract had not been subject to negotiation." *Garcia*, 2002 Ohio App. LEXIS 1917 at ¶ 61.[8] Moreover, Miami-Jacobs had no obligation to explain the arbitration clause. "[T]here is no requirement that an arbitration

---

[7] *See also Mazera v. Varsity Ford Mgmt. Servs.*, 565 F.3d 997 (6th Cir. 2009) (Plaintiff's asserted "lack of bargaining power, the absence of an attorney, language problems, and his degree of understanding…[are immaterial] with respect to the validity of the arbitration agreement.").

[8] "[A]n unequal bargaining position is not, in and of itself, a sufficient reason in law or equity to hold that arbitration agreement unenforceable." *Hawkins v. O'Brien*, 2009-Ohio-60, 2009 Ohio App. LEXIS 73, at *24 (Ohio App. Jan. 9, 2009). The court further stated that, "there must be some evidence that, in consequence of the imbalance, the party in the weaker position was defrauded or coerced into agreement to the arbitration clause." *Id.* However, there is no evidence Plaintiffs were coerced into the agreement of the clause. In fact, the evidence demonstrates that Plaintiffs were required to initial the clause which was printed in bold letters.

clause be explained orally to a party prior to signing where the provisions at issue were not in fine print, were neither hidden nor out of the ordinary, and were not misrepresented to the signatory." *Id.* at ¶ 41.[9]

Third, Plaintiffs argue that the arbitration clause is procedurally unconscionable because it was provided to them on a "take-it-or-leave-it basis" within a standardized form and thus was an adhesionary clause.[10] "[A] pre-printed sales contract containing an arbitration clause that is a condition precedent to the final sale, without more, fails to demonstrate unconscionability of the clause." *Eagle v. Fred Martin Motor Co.*, 809 N.E.2d 1161, 1179 (Ohio App. Feb. 25, 2004).[11] A contract of adhesion (or an arbitration clause found in such a contract) is not necessarily unconscionable *per se*. *Taylor Bldg. Corp. of Am. v. Benfield*, 884 N.E.2d 12 (Ohio 2008). "[A]n unequal bargaining position is not, in and of itself, a sufficient reason in law or equity to hold [an] arbitration agreement unenforceable." *Stachurski*, 642 F.Supp.2d at 768. Instead, "there must be some evidence that, in consequence of the imbalance, the party in the weaker position was defrauded or coerced into agreement to the arbitration clause." *Id.* Plaintiff

---

[9] *See, e.g., Upton v. Tribilcock*, 91 U.S. 45, 50 (1875) ("It will not do for a man to enter into a contract, and, when called upon to respond to its obligations, to say that he did not read it when he signed it, or did not know what it contained. If this were permitted, contracts would not be worth the paper on which they are written.").

[10] Suffice it to say, agreements to arbitrate may indeed be "standard." *See George Watts & Son, Inc. v. Tiffany & Co.*, 248 F.3d 577, 583 (7th Cir. 2001) ("As a final note, mandatory arbitration clauses are prevalent in a broad collection of contracts, forcing parties to accept the arbitral rather than judicial forum to adjudicate their rights.").

[11] *Id.* at 1175 (holding an automobile dealer's standard sales contract unconscionable in part because purchasing a car is a necessity and therefore "transactions involving modern day necessities such as transportation deserve special scrutiny before an arbitration clause is enforced by the courts.")

submits no evidence that they were coerced or defrauded into agreeing to the arbitration clause.

Finally, Plaintiffs make no claim for fraud in the inducement. At most, Plaintiffs indicate that the admissions process felt "rushed." (Doc. 21, Exs. 1-7 at ¶ 7). However, Plaintiffs approached Miami-Jacobs about attending classes, and they uniformly admit that they "looked into similar programs at other local career schools" before visiting Miami-Jacobs. (*Id.* at ¶ 20). Plaintiffs never claim that Miami-Jacobs prohibited them from reading any of the contracts they signed (which were only two pages long), told them that they could not seek legal advice, or refused to provide them information regarding arbitration if asked. Plaintiffs present no facts upon which this Court could conclude that Miami-Jacobs "made a knowing, material misrepresentation" about the arbitration clause "with the intent of inducing the [Plaintiffs'] reliance" on that misrepresentation, which is Ohio's standard for voiding the agreement. *ABM Farms, Inc. v. Woods*, 692 N.E.2d 574, 578 (Ohio 1998). Therefore, Plaintiffs have not demonstrated that the arbitration clause itself was fraudulently induced and their "meeting of the minds" argument fails.[12]

---

[12] Plaintiffs argue that the arbitration agreement is invalid because there was no meeting of the minds or manifestation of mutual assent. However, in Ohio, a valid arbitration clause does not fail for lack of mutuality, as long as consideration supports the contract. *Anderson v. Delta Funding Corp.*, 316 F. Supp.2d 554, 566-67 (2004). The Court finds that valid consideration requires that the parties bargain for performances or return promises. *Harmon v. Philip Morris, Inc.*, 697 N.E.2d 270 (1997). Valid consideration supports the agreement. Plaintiff cites *Walker v. Ryan's Family Steakhouses, Inc.*, 400 F.3d 370, 383-84 (6th Cir. 2005), for the proposition that a "meeting of the minds" is required for any valid contract. Plaintiffs attempt to avoid the presumption of arbitrability by alleging that they "did not know, understand, or agree to binding arbitration upon signing the enrollment application." (Doc. 22 at 4). However, the portion of *Walker* cited by Plaintiffs was actually expressly based on an interpretation of Tennessee law.

### *2. Substantive Unconscionability*

"A contract is substantively unconscionable when its terms unreasonably favor one party over another." *Gilchrist v. Inpatient Med. Servs., Inc.*, No. 5:09cv2345, 2010 U.S. Dist. LEXIS 86199, at *9 (N.D. Ohio Aug. 23, 2010). "No set of general factors governs commercial unreasonableness; instead, considerations vary case by case." *Id.*

Plaintiffs argue that the arbitration clause is substantively unconscionable because it is cost-prohibitive. As the parties seeking to invalidate the arbitration clause, Plaintiffs "bear[] the burden of showing the likelihood of incurring such costs." *Garcia*, 2002 Ohio App. LEXIS 1917 at ¶ 69 (*quoting Green Tree Fin. Corp. v. Randolph*, 531 U.S. 79, 92 (2000)). Plaintiffs cannot simply reply on "generic information contained in AAA Commercial Rules and unsupported statements." *Id.* Instead, they must provide evidence regarding their "ability to pay the arbitration fees and costs, the expected cost differential between arbitration and litigation in court, and whether that cost differential is so substantial as to deter the bringing of claims or cause arbitration to be an unreasonable alternative to the judicial forum." *Id.* at ¶ 70. Assuming Plaintiffs' summary of arbitration fees is accurate, Miami-Jacobs has committed to paying any arbitration fees

---

As the district court stated, "Tennessee courts have at times refused to hold parties to contracts they have not read…There is strong evidence…that potential employees were given misinformation about the Agreement and the arbitration process and never told they were waiving their right to a trial when the Agreement was explained to them." *Walker v. Ryan's Family Steak Houses, Inc.*, 289 F. Supp. 2d 916, 935 (M.D. Tenn. 2003), *affirmed citing* Tennessee law, 400 F.3d at 383-84. Conversely, the arbitration agreement in the instant case is governed by Ohio law, which presumes that an adult who signs a contract has read it and is conclusively bound by its terms. *See, e.g., Garcia*, 2002 Ohio App. LEXIS 1917 at ¶ 43. Although Ohio recognizes an exception for fraud in the inducement (similar to the Tennessee exception described in *Walker* where a party was given misinformation before signing), Plaintiffs do not allege sufficient facts here to support such a claim.

incurred in excess of $375.00. (Doc. 22 at 5, n.4 and *Singleton I* at 5). As noted by the state court in *Singleton*, this "eliminates any claim of substantive unconscionability." *Singleton I* at 5. Arbitration is simply not cost-prohibitive.

Plaintiffs have demonstrated neither procedural unconscionability nor substantive unconscionability and therefore Plaintiffs' unconscionability argument fails as a matter of law.[13]

### C. False Claims Act

Next, Plaintiffs argue that because they asserted claims under the False Claims Act ("FCA"), the Court must determine whether Congress intended for the claims to be subject to arbitration.

The Supreme Court has repeatedly recognized that federal statutory claims can be appropriately resolved through arbitration, and it has enforced agreements to arbitrate such claims. *Green Tree Fin. Corp.*, 531 U.S. at 79. "Even claims arising under a statute designed to further important social policies may be arbitrated because 'so long as the prospective litigant effectively may vindicate [his or her] statutory cause of action in the arbitral forum,' the statute serves its functions." *Id.* at 90. The Supreme Court has held

---

[13] Additionally, Plaintiffs argue that Miami-Jacobs waived its right to arbitration because it sued other students in small claims court for unpaid tuition in the past. However, waiver must be determined on a individualized basis, and is therefore inapplicable in the instant case. *See, e.g., Bhole, Inc. v. D&A Plumbing & Heating, Inc.*, 2007-Ohio-3635, 2007 Ohio App. LEXIS 3323, at *3 (Ohio App. July 16, 2007). A waiver of a contract term with respect to one counterparty has no effect on enforcement of the same term in a different contract with a different counterparty. *Chesner v. Stewart Title Guar. Co.*, No. 1:06cv476, 2009 U.S. Dist. LEXIS 22453, at *30 (N.D. Ohio Jan. 9, 2009) (*citing ISI Sys., Inc. v. Equifax, Inc.*, No. 93-12186, 1996 U.S. Dist. LEXIS 882 at *6 (D. Mass. Jan. 12, 1996) (failure to insist upon contractual notice as to unrelated third party did not waive notice requirement as to claim by plaintiff under same agreement)).

that "having made the bargain to arbitrate, the party should be held to it unless Congress itself has evinced an intention to preclude a waiver of judicial remedies for the statutory rights at issue." *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 26 (1991).

Plaintiffs cite *Ngyuen v. City of Cleveland*, 120 F. Supp. 2d 643, 647 (N.D. Ohio 2000), for the proposition that "arbitration conflict[s] with the underlying purpose" of the FCA. Plaintiffs also argue that the United States has "not…given" its consent to arbitrate this non-class claim brought by three of the individual Plaintiffs. (Doc. 22 at 19).

First, the *Ngyuen* decision has been rejected by this Court. As summarized in *United States ex rel. Cassidy v. KBR, Inc.*, 590 F.Supp.2d 850, 862-63 (S.D. Texas 2008) (*citing* this Court's decision in *Orcutt v. Kettering Radiologists, Inc.*, 199 F. Supp. 2d 746 (S.D. Ohio 2002)):

> [T]o the extent Cassidy relies upon *Ngyuen*…in support of his position that an inherent conflict exists, other courts have uniformly rejected *Ngyuen*'s reasoning. *See United States ex rel. Wilson v. Kellogg Brown & Root, Inc.*, 525 F.3d 370, 381 (4th Cir. 2008) (noting that other courts "have not found *Nguyen* persuasive"); *McBride*, 2007 U.S. Dist. LEXIS 48112, at *4-5 (finding that the reasoning of *Nguyen* is "unpersuasive"); *Orcutt*, 199 F. Supp. 2d at 753-56 (rejecting *Nguyen*). Indeed, the *Nguyen* court is the only court to find FCA retaliation claims are not arbitrable because an inherent conflict exists between arbitration and the underlying purposes of the FCA.

Second, the United States indicated that it "is not a party to the arbitration agreement asserted by Defendants' in the Motion, and is not bound by any such arbitration clause." (Doc. 19). Contrary to Plaintiffs' argument, the United States has not withheld its consent to arbitration of the claim, but rather indicated that "any arbitration ruling as to such a claim must necessarily be deemed a non-binding recommendation."

14

(*Id.*) Even if mandatory arbitration of the Plaintiffs' FCA claim is not binding on the United States, arbitration is appropriate given the substantive and procedural posture. Moreover, as the United States has affirmatively elected not to intervene, it cannot prevent the arbitration of Plaintiffs' FCA claims against the Defendants.

The FCA states that any actions by a "private person" under the statute are "for the person and for the United States Government." 31 U.S.C. § 3730(b). While the FCA action was necessarily "brought in the name of the Government" (*id.*), it still represents a claim belonging to the Plaintiffs themselves. Because the FCA dispute is a "dispute arising out of or relating to this enrollment agreement," it falls within the broad scope of the arbitration clause Plaintiffs signed.

### D. Public Policy

Plaintiffs alternatively argue that they should not be required to arbitrate their Ohio Consumer Sales Practices Act ("CSPA") claim because: (1) the high costs of arbitration will prevent them from pursuing their claims; (2) the lack of a public record helps to further the alleged fraud; (3) the nature of their claims requires the discovery process available in a court action; and (4) the evidence in a consumer fraud case should be evaluated by a jury rather than a commercial arbitrator. However, Ohio courts have rejected these arguments. *Gustavus v. Eagle Investments*, 2012-Ohio-1433, 2012 Ohio App. LEXIS 1229, at ¶¶ 26-27, 31 (Ohio App. Mar. 30, 2012) (no impediment to arbitration under CSPA, the Ohio Corrupt Activities Act, or RICO: "The trial court rejected Gustavus's public policy defense [because] the FAA trumps a state statute and any policy against arbitration…as an obstacle to the accomplishment of Congress's

objectives in enacting the FAA. We agree."). Therefore, Plaintiffs' public policy arguments fail.

### E. Class Allegations

Finally, Plaintiffs argue that it would be improper to preclude class action litigation by requesting them to arbitrate their claims individually.

When an agreement to arbitrate encompasses claims asserted in court, dismissal is appropriate under Fed. Rule Civ. P. 12(b)(1) for lack of subject matter jurisdiction or under Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief can be granted.[14] An arbitration agreement that is silent on the question of class procedures cannot be interpreted to allow class-wide arbitration. *AT&T v. Concepcion*, __ U.S. __, 131 S. Ct. 1740, 1750 (2011) ("[T]he 'changes brought about by the shift from bilateral arbitration to classwide arbitration are fundamental.' Classwide arbitration includes absent parties, necessitating additional and different procedures and involving higher stakes. Confidentiality becomes more difficult. The conclusion follows that class arbitration, to the extent it is manufactured…rather than consensual, is inconsistent with the FAA."). In the instant case the parties agreed to arbitration, but not class arbitration. Therefore, each Plaintiff "abandoned his [or her] right to enforce those claims as part of a

---

[14] *See, e.g., Simon v. Pfizer Inc.*, 398 F.3d 765, 773 (6th Cir. 2005) ("[A] compulsory arbitration provision divests the District Court of jurisdiction."); *Stachurski*, 642 F. Supp. 2d at 774-75 (N.D. Ohio 2009) (dismissing case pursuant to Rule 12(b)(1) because plaintiffs' claims were referable to binding arbitration and "there is 'nothing left for the district court to do but execute judgment.'").

16

class action." *Hornstein v. Mort. Mkt., Inc.*, 9 Fed. Appx. 618, 619 (8th Cir. 2001).[15] Accordingly, Plaintiffs waived their class action claims.

## IV. CONCLUSION

Accordingly, for the foregoing reasons, Defendants' motion to compel arbitration and dismiss this case (Doc. 14) is hereby **GRANTED IN PART** and **DENIED IN PART**. Specifically, the Court dismisses all claims except those claims asserted under the False Claims Act. Plaintiffs shall arbitrate all claims, including claims asserted under the False Claims Act. After arbitration on all claims, the parties shall either request that the Attorney General consent to the resolution of the FCA claims as determined at arbitration or resume litigation on the FCA claims in this Court. The Court hereby **STAYS** this case pending arbitration. The parties shall notify the Court promptly upon conclusion of the arbitration with respect to how they intend to proceed.

Defendant Gryphon's motion to dismiss for lack of personal jurisdiction (Doc. 15) is **DENIED** without prejudice, subject to refilling upon completion of arbitration, if required.

**IT IS SO ORDERED**.

Date: 1/31/13    *s/ Timothy S Black*
Timothy S. Black
United States District Judge

---

[15] *See also Fitzhugh v. Am. Income Life Ins. Co.*, Case No. 1:11cv5330 (N.D. Ohio Nov. 3, 2011) ("following the guidance of *Concepcion*, Plaintiff's class/collective action claims must be dismissed while the remainder of the case is referred to arbitration").